UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **24-20108-CR-MOORE/ELFENBEIN**

18 U.S.C. § 371
18 U.S.C. § 670
18 U.S.C. § 982(a)(1)(C)

FILED BY _____MP_____ D.C.

**Mar 19, 2024**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES OF AMERICA

v.

**ALEX ORIA,**

         Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment,

1. The U.S. Food and Drug Administration ("FDA") was the federal agency responsible for protecting the health and safety of the American public by, among other things, regulating the distribution and sale of prescription drugs and enforcing the Food, Drug, and Cosmetic Act ("FDCA"), Title 21, United States Code, Sections 301 et seq. One purpose of the FDCA was to ensure that drugs sold for use by humans were safe, effective, and bore labeling containing only true and accurate information.

2. Federal law, including Title 21, United States Code, Section 360eee-1, generally required that prescription drugs sold in the United States be accompanied by product tracing information, which consisted of transaction information, transaction history, and a transaction statement. The product tracing information identified, among other things, the product, the

quantity, the lot number, strength and dosage, the date of each sale, and the parties to each transaction. Such product tracing information was commonly referred to in the industry as "T3s" or "pedigrees."

3. Under the FDCA, "drugs" were defined as, among other things, articles intended for use in the cure, mitigation, treatment, or prevention of disease, pursuant to Title 21, United States Code, Section 321(g)(1)(B). A "prescription drug" was any drug intended for use in humans that, because of its toxicity or potential for harmful effect, the method of its use, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug, or was limited by an approved application under Tile 21, United States Code, Section 355 to use under the professional supervision of a practitioner licensed by law to administer such drug, pursuant to Title 21, United States Code, Section 353(b)(1).

4. The introduction or delivery for introduction, or the causing thereof, into interstate commerce of any drug that was adulterated or misbranded was a violation of federal law, pursuant to Title 21, United States Code, Section 331(a).

5. A drug was misbranded if, among other things, its labeling was false or misleading in any particular way, pursuant to Title 21, United States Code, Section 352(a)(1). A "label" was written, printed, or graphic matter upon the immediate container of the drug, while "labeling" was a broader term that included all labels and other written, printed, or graphic matter upon the drug or any of its containers or wrappers, or that accompanied the drug, pursuant to Title 21, United States Code, Section 321(k) and (m).

### Prescription Drug Diversion

6. The term "prescription drug diversion" referred to the various ways in which prescription drugs were removed from regulated distribution channels and subsequently

reintroduced into the wholesale marketplace. Common methods of prescription drug diversion included, but were not limited to, acquiring the drugs illegally through theft, fraud, or from individual patients for whom the prescription drugs had been prescribed and dispensed but intentionally not consumed. These diverted drugs were then reintroduced into the wholesale marketplace with false documentation concealing their true source and eventually resold to individual consumers by pharmacies, which also typically billed the drugs to "health care benefit programs," as defined by Title 18, United States Code, Section 24(b). Once diverted from the regulated distribution channel, it became difficult for regulators and consumers to know whether a prescription drug was altered, stored in improper conditions, had its potency adversely affected, or was otherwise harmful.

### The Defendant and Related Entities and Individuals

7. Eclipse Meds, LLC ("ECLIPSE") was a limited liability company organized under the laws of the State of Texas with a business address of 2800 Shamrock Avenue, Ste F, Fort Worth, Texas. ECLIPSE purported to provide legitimate prescription drugs, including expensive human immunodeficiency virus ("HIV") medication, to wholesale distributors of pharmaceutical products.

8. Defendant **ALEX ORIA** was a resident of Costa Rica.

9. Orel Valdespino Fernandez, a resident of Miami-Dade County, Florida, and Fort Worth, Texas, was a listed owner, operator, and agent of ECLIPSE.

10. Company 1 was a company formed under the laws of the State of Florida with a business address of 5201 Blue Lagoon Dr., Suite 813, Miami, Florida. Company 1 purported to be a sports equipment company. Company 1 had a bank account at a bank located in Miami, Florida (the "Company 1 Account").

3

11. Individual 1, a resident of Texas, was a relative of **ALEX ORIA**.

12. Individual 2 was a resident of Texas.

13. Pharmacy 1 was a pharmacy located in Baytown, Texas, that purported to distribute HIV prescription drugs

14. Pharmacy 2 was a pharmacy located in Harlingen, Texas, that purported to distribute HIV prescription drugs.

15. Company 2 was a company formed under the laws of Texas and had a principal business address of 13988 Diplomat Drive, Ste 100 Farmers Branch, Texas. Company 2 owned and operated a group of pharmacies located in Texas, Maryland, and Nevada, including Pharmacy 2.

## COUNT 1
### Conspiracy to Introduce into Interstate Commerce Misbranded Drugs and to Defraud the United States
### (18 U.S.C. § 371)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around March 2022, and continuing through in or around at least December 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ALEX ORIA,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Orel Valdespino Fernandez, Individual 1, and others known and unknown to the Grand Jury:

  a. to commit an offense against the United States, that is, with the intent to defraud

4

and mislead, to introduce and deliver for introduction into interstate commerce, and cause to be introduced and delivered for introduction into interstate commerce, misbranded drugs, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2); and

      b.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the FDA in its oversight and regulation of the interstate sale and distribution of drugs in the United States and its efforts to safeguard the health and safety of consumers who purchase drugs in the United States, in violation of Title 18, United States Code, Section 371.

### Purpose of the Conspiracy

      3.      It was a purpose of the conspiracy for the defendant **ALEX ORIA** and his co-conspirators to unlawfully enrich themselves by selling and distributing misbranded, and diverted drugs as if they had been acquired through the legitimate channels of distribution in the pharmaceutical market.

### Manner and Means of the Conspiracy

The manner and means by which defendant **ALEX ORIA** and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

      4.      Orel Valdespino Fernandez purchased ECLIPSE, a pharmacy wholesale company, for his own use and benefit and for the use and benefit of his co-conspirators.

      5.      Orel Valdespino Fernandez and his co-conspirators maintained a wholesale drug distributor license for ECLIPSE.

      6.      **ALEX ORIA**, Orel Valdespino Fernandez, and their co-conspirators, through ECLIPSE, offered for sale misbranded and prescription drugs, including expensive HIV

medication. The medication, among other things, was missing original labeling, lacked transaction and pedigree documentation, or was accompanied by falsified transaction and pedigree documentation.

7. **ALEX ORIA**, Orel Valdespino Fernandez, and their co-conspirators introduced these misbranded and diverted prescription drugs, including HIV medication, into interstate commerce by selling them, through ECLIPSE, to Pharmacy 2, Company 2, and others at steep discounts, far below the pricing available when the drugs were sold through legitimate channels of distribution.

8. **ALEX ORIA**, Orel Valdespino Fernandez, and their co-conspirators provided ECLIPSE customers with falsified transaction and pedigree documentation to make it appear as though the medication had been properly acquired through legitimate and regulated channels of distribution.

9. Pharmacy 2, Company 2, and others paid ECLIPSE millions of dollars for these misbranded and diverted drugs.

10. Orel Valdespino Fernandez and his co-conspirators transferred proceeds of the sale of misbranded drugs from ECLIPSE to the Company 1 Account in Miami, Florida.

11. **ALEX ORIA** and his co-conspirators used the proceeds of the scheme for their own use and benefit, the use and benefit of others, and to further the fraud.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one member of the conspiracy committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

6

1.       In or around May 2022, ███████████████ co-conspirators met in Miami, Florida, to discuss a plan to operate ECLIPSE.

2.       On or about May 8, 2022, Orel Valdespino Fernandez signed an attestation on behalf of ECLIPSE agreeing to comply with the FDCA in connection with ECLIPSE's application for a wholesale license with the Texas Department of State Health Services Licensing.

3.       On or about May 13, 2022, Orel Valdespino Fernandez and his co-conspirators caused a bank account located in Miami, Florida, to wire $75,000 to the prior owners of ECLIPSE, with a wire memo stating, "Payment 1 of 2," which was a partial payment for the purchase of ECLIPSE.

4.       On or about May 18, 2022, Orel Valdespino Fernandez and his co-conspirators caused a bank account located in Miami, Florida, to wire $180,000 to ECLIPSE, which was the remaining payment for the purchase of ECLIPSE.

5.       On or about August 14, 2023, **ALEX ORIA**, on behalf of ECLIPSE, negotiated the sale of HIV medication to Individual 2, on behalf of Pharmacy 1, via telephone.

6.       On or about August 22, 2023, **ALEX ORIA** and his co-conspirators issued and caused to be issued an invoice from ECLIPSE to Pharmacy 1 in the amount of $24,000 for the sale of eight bottles of HIV medication.

7.       On or about August 24, 2023, **ALEX ORIA** had a telephone conversation with Individual 2 wherein they agreed for Individual 1 to collect payment from Individual 2.

8.       On or about August 24, 2023, Individual 1 received $24,000 in cash from Individual 2 as payment for the purchase of HIV medication.

9.       On or about October 28, 2023, **ALEX ORIA**, on behalf of ECLIPSE, negotiated the sale of additional HIV medication to Individual 2, on behalf of Pharmacy 1, via telephone.

10. On or about November 14, 2023, **ALEX ORIA** and his co-conspirators issued and caused to be issued an invoice from ECLIPSE to Pharmacy 1 in the amount of $24,000 for the sale of eight bottles of HIV medication.

11. On or about November 21, 2023, **ALEX ORIA** and Individual 2 had another telephone call where they agreed for Individual 1 to collect payment from Individual 2.

12. On or about December 7, 2023, Individual 1 received $21,400 in cash from Individual 2 as payment for the purchase of HIV medication.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
**Conspiracy to Traffic in Pre-Retail Medical Products with False Documentation**
**(18 U.S.C. § 670)**

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as although fully set forth herein.

2. From in or around March 2022, and continuing through in or around at least December 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ALEX ORIA,**

an agent of an organization in the supply chain for pre-retail medical products, did knowingly and willfully combine, conspire, confederate, and agree with Orel Valdespino Fernandez, Individual 1, and others, known and unknown to the Grand Jury, to knowingly and falsely make, alter, forge, and counterfeit the labeling and documentation of pre-retail medical products, and to knowingly possess, transport, and traffic in pre-retail medical products involving false, altered, forged, and counterfeited labels and documentation, in and using a means and facility of interstate commerce, in violation of Title 18, United States Code, Sections 670(a)(2) and (3).

It is further alleged that the value of the medical products involved in the offense was $5,000 or greater.

All in violation of Title 18, United States Code, Sections 670(a)(6), (b)(1), and (c)(2).

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ALEX ORIA**, has an interest.

2. Upon conviction of a violation Title 18, United States Code, Section 371, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. The property subject to forfeiture as a result of the alleged offense includes, but is not limited to, a sum that represents the total amount of funds involved in or derived from the alleged offense and may be sought as a forfeiture money judgment.

4. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPE   ON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
JACQUELINE Z. DEROVANESIAN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

ALEX ORIA,

_____/
Defendant.

CASE NO.: 24-20108-CR-MOORE/ELFENBEIN
_____

**CERTIFICATE OF TRIAL ATTORNEY**

**Court Division** (select one)
- ☒ Miami   ☐ Key West   ☐ FTP
- ☐ FTL     ☐ WPB

**Superseding Case Information:**
New Defendant(s) (Yes or No) ____
Number of New Defendants ____
Total number of new counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __10__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☐ 0 to 5 days
   - II  ☒ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Altman  Case No. 24-CR-20045
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
JACQUELINE DEROVANESIAN
DOJ Trial Attorney
FL Bar No.    125662

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** _____ **ALEX ORIA** _____

**Case No:** _____

Count #:  1

Title 18, United States Code, Section 371

Conspiracy to Introduce into Interstate Commerce Misbranded Drugs and to Defraud the United States
* Max. Term of Imprisonment:    5 years
* Mandatory Min. Term of Imprisonment (if applicable):   N/A
* Max. Supervised Release:    3 years
* Max. Fine:   $250,000 or twice the gross gain or loss resulting from the offense

Count #:  2

Title 18, United States Code, Section 670

Conspiracy to Traffic in Pre-Retail Medical Products with False Documentation
* Max. Term of Imprisonment:    20 years
* Mandatory Min. Term of Imprisonment (if applicable):    N/A
* Max. Supervised Release:    3 years
* Max. Fine:   Three times the economic loss attributable to the violation or $1 million

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.