UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-CR-20108-KMM

UNITED STATES OF AMERICA,

v.

ALEX ORIA,

    Defendant.
_____/

## **RELEASE ORDER**

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, the Court held a hearing to determine whether to detain Defendant Alex Oria before and until the conclusion of trial. The United States of America (the "Government") moved for pretrial detention under 18 U.S.C. § 3142(f)(2), arguing that there is a serious risk Defendant will flee and a serious risk Defendant will obstruct justice, threaten, injure, or intimidate a prospective witnesses or juror, or attempt do so. The Government argues that Defendant should be detained because no combination of conditions will reasonably assure the appearance of the Defendant or the safety of the community. *See* 18 U.S.C. § 3142(e)(1). But, having considered the factors enumerated in 18 U.S.C. § 3142(g), the Court finds that there is a combination of conditions that reasonably assures the appearance of Defendant and the safety of the community. Accordingly, the Government's Motion for Pretrial Detention is **DENIED**.

The Court makes the following factual findings and, pursuant to 18 U.S.C. § 3142(h), sets forth all the conditions to which the release is subject:

Defendant is charged in an Indictment issued in the Southern District of Florida with one count of conspiracy to introduce into interstate commerce misbranded drugs and to defraud the

1

United States, in violation of 18 U.S.C. § 371, and one count of conspiracy to traffic in pre-retail medical products with false documentation, in violation of 18 U.S.C. § 670.

The Government proffered the following facts at the hearing. Defendant has lived in Costa Rica for the past five years. During this time, Defendant has brokered the sale of "diverted" HIV medication in the United States with unindicted co-conspirators through the entity, Eclipse Meds, LLC ("Eclipse"). Upon inquiry from the Court, the Government defined "diverted pharmaceuticals" as medical products sold outside the normal distribution chain or sold without legitimate documentation.

The Government proffered evidence of dealing in diverted pharmaceuticals, including various wires to companies with "HIV" in the subject line, and medication sold significantly below the manufacturer's recommend price. In a sale organized by law enforcement, the Government proffers that Defendant delivered medication with missing information and in a "worn" condition, suggesting the medicine did not come from the manufacturer. Subsequently, when shown this medicine, the manufacturer claimed the medicine appeared diverted.

Additionally, the Government proffered that, Defendant, upon becoming aware of the investigation for this case, threatened a confidential informant during a recorded phone call in January 2024. During the call, Defendant made a series of statements including, "I'm going to hurt somebody today," and "I'm going to kill somebody." Defendant also asked the confidential informant if he is the "snitch," and repeatedly referenced finding out who the FBI "snitch" is. The recording was moved into evidence (by Defendant), but it was not played in court.

The Court heard testimony from Homeland Security Investigations Special Agent Andrew Escobedo. Special Agent Escobedo conducted two undercover meetings with the Defendant's son—who is not named in the indictment—to pick up $28,000 in cash. Agent Escobedo acknowledged that the drugs involved in the conspiracy were always in the United States while

Defendant was in Costa Rica. Agent Escobedo also acknowledged that Defendant was not the owner of Eclipse, the company that purportedly sold the diverted HIV medication. With respect to the recorded call, Special Agent Escobedo acknowledged that Defendant sounded like he was drunk when he made the statements described above.

The Government argues that Defendant poses a serious risk of flight. First, the Government relies on Defendant's positive comments about Costa Rica, ownership of property there, an application for Costa Rican citizenship, and the presence of Defendant's wife in Costa Rica as factors contributing to a risk of flight. The Government also proffered that Defendant challenged his extradition from Costa Rica. Furthermore, the Government argues that the seriousness of the charges, with a minimum sentence of 168 months based on the Government's sentencing calculations, increases the risk of flight.

Defendant disputes that he poses a risk of flight. First, he proffers without contradiction that he applied for residency, not citizenship in Costa Rica. He also notes that after learning about the first arrests in this investigation in January of 2024, he remained in his known address in Costa Rica and made no attempt to conceal his whereabouts. In fact, law enforcement agents visited his residence and spoke to the property manager at his complex, inquiring about Defendant. The agents identified themselves as being from "Organismo de Investigación" ("OIJ") or the Judicial Investigation Department. Defendant was not present at the time, and the property manager, Adolfo Murillo Gonzalez, notified Defendant that OIJ agents had come to the property looking for him.[1] Defendant proffered that he contacted those agents and was told not to worry about the reason for their visit. Defendant made no attempts to flee and remained in his residence until the day he was arrested, approximately ten days later. The Government did not contest these facts.

---

[1] Mr. Gonzalez attested to these facts in an affidavit offered by Defendant and admitted without objection as an exhibit to the hearing.

3

Regarding the challenged extradition order, Defendant proffered, and the Government did not controvert, that his challenge to extradition was on the advice of counsel and was based on counsel's legal opinion that the crimes he was to be extradited for are not crimes in Costa Rica. Finally, the Defendant proffered that, though he has a prior criminal conviction in the Southern District of New York for similar conduct, after his conviction he testified for the Government in two trials subject to a subpoena and without receiving benefits for his cooperation. The Government did not dispute this proffer.

Defendant proposed he be released on a condition of bail and his daughter would be willing co-sign the bond. Defendant has family in Houston, Texas, including his daughter and brother. Defendant's brother is a radiologist who has a practice in Texas and property in Miami, Florida. Defendant proposes while on bond, he can reside with Paul Aronowitz, a long-time friend and barred attorney, who lives in Missouri City, Texas.

The Court finds the Government has not shown by a preponderance of the evidence that Defendant poses a serious risk of flight. First, the Government argues that the seriousness of the charge and the potential prison time Defendant may be facing increases the risk Defendant will flee. This argument is undermined by Defendant's uncontested proffer that he has served serious jail time before, has no prior bond or supervision violations, and has testified in two federal cases for the Government subject to a subpoena. Meaning, he has a proven record of showing up pursuant to a court order, and no record of failing to appear as required.

Despite the Government's proffered guideline calculation, the offense with which Defendant is charged is not "serious." *See United States. v. Guzman Holguin*, No. 25-CR-20091, ECF No. 23 (denying motion for pretrial detention and noting that, despite government's characterization of offense charged, the facts pertaining to this particular defendant "may violate the statute, but it is hardly a 'serious' offense.") (aff'd, ECF No. 24). Rather, the Indictment alleges

4

that Defendant conspired to sell misbranded pharmaceuticals through an LLC. Indeed, the offense with which Defendant is charged carries with it no presumption of detention. Accordingly, and despite the Government's characterizations, the nature and circumstances of Defendant's offense combined with his history of appearing in court, weighs against a finding that Defendant poses a serious risk of flight.

Furthermore, Defendant's proffer, again uncontroverted, that he was aware of the investigation since January 2024, and that he remained in his known address in Costa Rica after agents came looking for him, undermines the Government's argument that Defendant poses a serious of flight. Additionally, the Court appreciates that Defendant's daughter flew in from Houston, Texas, to attend this hearing and is willing to co-sign the bond. Defendant's suggestion that he stay with Paul Aronowitz, a barred attorney, is persuasive as well. Defendant has already given his passport to Counsel, and Counsel has made clear the passport will be immediately surrendered.

Turning to the Government's argument that Defendant's challenge of the extradition order supports a finding of a serious risk of flight, the Court is also not persuaded. Defendant's uncontroverted proffer that he acted on advice of counsel undermines the significance the Government places on the extradition to substantiate its risk of flight argument. Risk of flight denotes a volitional choice to evade prosecution. *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017) ("[T]he Act is concerned with the risk that the defendant may flee or abscond, that is, that he would fail to appear by virtue of his own volition, actions and will.") (internal quotation marks omitted).

While Defendant's contacts with Costa Rica, specifically the presence of his wife (of two years) there, are significant, the Court finds that there is a combination of conditions that will reasonably ensure Defendant's appearance as required. *See United States v. Runsdorf*, No. 22-

8015, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) ("It is instructive to remember that '*every* case involves some degree of flight risk, and that the Bail Reform Act nevertheless favors release.'") (quoting *United States v. White*, No. 21-MJ-04070, 2011 WL 2155441, at *12 (M.D. Tenn. May 27, 2021)).

The Government argued that Defendant poses a danger to the community; specifically, the Government is concerned that Defendant will threaten or intimidate witnesses based on the recorded call between Defendant and the confidential informant. While his intoxication during the call does not excuse the behavior, it tends to diminish the evidence of his intent—that is, that he meant what he said. Moreover, the recorded conversation occurred in January 2024, yet Defendant remained at large for almost six months following, without incident. Even after agents confirmed Defendant's residence, he was not arrested for another week. The Court finds that the Government has not met its burden to show with clear and convincing evidence that Defendant poses a serious threat to the community or to a witness.

Finally, the Government moved to stay the release of Defendant pending an appeal to the District Judge. A stay is an "intrusion into the ordinary processes of administration and judicial review" and is "not a matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009); *see United States v. Abass*, No. 25-CR-0079-TSC, 2025 WL 1096795, at *1 (D.D.C. Apr. 11, 2025). Though the Court allowed the Government time to prepare an argument in support of a stay, Government counsel solely reiterated her basis for seeking detention and failed to offer any argument that would persuade the Court to grant the stay under the four factors enumerated in *Nken*. Nor did Government counsel confer with defense counsel, contrary to my explicit instructions to do so; had she attempted to confer, she would have learned the request for a stay was mooted, at least in part, by Defendant's intention to remain custody until his next scheduled appearance on May 20, 2025.

For the foregoing reasons, the Court **ORDERS** that Defendant Alex Oria be released subject to the following conditions as set forth in my Minute Order dated May 14, 2025 (ECF No. 32):

1. The Court sets a $100,000.00 bond, cosigned by Defendant's daughter, Alexis Quisenberry;

2. Defendant is to surrender all passports and travel documents and shall not obtain new ones during the pendency of his bond;

3. Defendant shall report to Pretrial Services as directed;

4. Defendant shall submit to random urine testing by Pretrial Services and treatment as deemed necessary;

5. Defendant shall refrain from excessive use of alcohol;

6. Defendant shall not contact any victims, witnesses, or co-conspirators, except through counsel;

7. Defendant's travel is limited to the Southern District of Florida and the Southern District of Texas;

8. Defendant is to reside with Paul Aronowitz; and

9. Defendant shall not hold employment in the healthcare field.

**DONE AND ORDERED** in Open Court in Miami, Florida this 14th day of May, 2025.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE